UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JIMLAR CORPORATION d/b/a
THE FRYE COMPANY.

                    Plaintiff-Counterclaim-defendant,

                                           **ANSWER and COUNTERCLAIMS**

                                         Civil Action No.:  07CV8622 (SHS)

      - against -

GMA ACCESSORIES, INC.,

                    Defendant–Counterclaimant,
-----------------------------------------------------------------X

Defendant, GMA Accessories, Inc., (hereinafter "GMA"), by its attorneys, answers the Complaint upon information and belief as follows:

1.    Denies knowledge or information sufficient to form a belief as to each and every allegation contained in paragraphs marked "1","6", "7", "8", "9", and "10"of the Complaint.

2.    Admits each and every allegation contained in paragraphs marked "2 and 5" of the Complaint.

3.    In answering paragraph marked "3" of the Complaint, denies that 28 U.S.C. § 2201 confers subject matter jurisdiction, admits that U.S. Registration No. 2,535,454 to CHARLOTTE was issued to GMA on February 5, 2002 by the U.S. Patent and Trademark Office, and denies the validity of the remaining allegations of this paragraph.

4.    Denies each and every allegation contained in paragraph marked "4" of the Complaint, except admits that GMA has accused JIMLAR of infringement.

5.    Denies that portion of paragraph "11" which alleges that Charlotte is a commonly

used style designation and a popular female first name.

6.   Denies as posited the allegations contained in paragraph marked "12" of the Complaint, except admits that, in conjunction with routine policing of the CHARLOTTE trademark, GMA discovered that most or all of the companies listed in paragraph "12" of the Complaint were making unauthorized use of the CHARLOTTE trademark, and following these companies receipt of "cease and desist" letters, most or all of these companies, upon information and belief, ceased use of the CHARLOTTE Mark.

7.   Denies each and every allegation in paragraph marked "13" of complaint.

8.   Denies as posited the allegations contained in paragraphs marked "14" and "15" of the Complaint.

9.   In answering paragraph marked "16" of the Complaint, admits that correspondence dated July 11, 2007 was sent to Jimlar by Andrew T. Sweeney, Esq., as attorney for GMA, but refers the court to said correspondence for the terms contained therein.

10.  In answering paragraph marked "17" of the Complaint, admits that correspondence dated August 14, 2007 was sent to Jildor by Andrew T. Sweeney, Esq., as attorney for GMA, but refers the court to said correspondence for the terms contained therein.

11.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in the first sentence of paragraph marked "18" of the Complaint and denies each and every remaining allegation therein.

**IN ANSWER TO THE ALLEGED FIRST CLAIM FOR RELIEF**

12.  Answering the allegations contained in paragraph marked "19" of the Complaint, defendant repeats and realleges each and every admission, denial, and allegation

contained in paragraphs of complaint numbered 1 through 18 hereof as if fully set forth at length herein.

13. Denies each and every allegation contained in paragraphs marked "20", "21", and "22" of the Complaint.

**IN ANSWER TO THE ALLEGED SECOND CLAIM FOR RELIEF**

14. Answering the allegations contained in paragraph marked "23" of the Complaint, defendant repeats and realleges each and every admission, denial, and allegation contained in paragraphs of complaint numbered 1 through 22 hereof as if fully set forth at length herein.

15. Denies each and every allegation contained in paragraphs marked "24" and "25" of the Complaint.

**IN ANSWER TO THE ALLEGED THIRD CLAIM FOR RELIEF**

16. Answering the allegations contained in paragraph marked "26" of the Complaint, defendant repeats and realleges each and every admission, denial, and allegation contained in paragraphs of complaint numbered 1 through 25  hereof as if fully set forth at length herein.

17. Denies each and every allegation contained in paragraphs marked "27" and "28" of the Complaint.

**IN ANSWER TO THE ALLEGED FOURTH CLAIM FOR RELIEF**

18. Answering the allegations contained in paragraph marked "29" of the Complaint, defendant repeats and realleges each and every admission, denial, and allegation contained in paragraphs of complaint numbered 1 through 28 hereof as if fully set forth at length herein.

19. Denies each and every allegation contained in paragraphs marked "30" and "31" of

3

the Complaint.

## IN ANSWER TO THE ALLEGED FIFTH CLAIM FOR RELIEF

20. Answering the allegations contained in paragraph marked "32" of the Complaint, defendant repeats and realleges each and every admission, denial, and allegation contained in paragraphs of complaint numbered 1 through 31 hereof as if fully set forth at length herein.

21. Denies each and every allegation contained in paragraphs marked "33", "34", "35", and "36" of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

22. The Complaint fails to state a claim against GMA Accessories upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

23. The claims in the Complaint are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

24. JIMLAR and its customers have infringed upon the mark CHARLOTTE in violation of the trademark laws and JIMLAR is barred from seeking the relief requested, in whole or in part, by virtue of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

25. The claims in the Complaint are barred because the court lacks jurisdiction over the claims stated in the complaint.

## AS AND FOR DEFENDANT'S COUNTERCLAIMS

26. Each of the CHARLOTTE federal registrations owned by GMA Accessories, Inc. (hereinafter "GMA") pre-date the first use of the CHARLOTTE mark by Plaintiff Jimlar Corporation d/b/a The Frye Company (hereinafter "JIMLAR").

27. Under Section 33(b) of the Lanham Act, registration of an incontestable mark is conclusive evidence of the ownership of the mark, the validity of the mark and the exclusive right of the owner to use the mark in commerce.

28. Since 1999, GMA has been and is now the title owner of Registration # 2,216,405 for the mark CHARLOTTE in International Class 26.   This mark was deemed uncontestable pursuant to section 15 of the Lanham Act.

29. Since 1999, GMA has been and is now the title owner of Registration # 2,217,341 for the mark CHARLOTTE in International Class 18.   This mark was deemed uncontestable pursuant to section 15 of the Lanham Act.

30. Since 2002, GMA has been and is now the title owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25.   This mark has been deemed uncontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act.

31. Since 2002, GMA has been and is now the title owner of Registration # 2,561,025 for the mark CHARLOTTE in International Class 9.   This mark has been deemed uncontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act.

32. GMA has been and is now the title owner of Registration # 3,242,358 for the mark CHARLOTTE in International Class 22.

33. In November of 2001, GMA was assigned all rights to Registration # 1135037. Pursuant to said assignment, GMA's use in commerce of the CHARLOTTE mark dates back to January 2, 1979.  (The registrations referred to in ¶28-33 are respectfully referred to herein as the "GMA marks").

34. The GMA Products consist of, among other things, clothing, shoes, and fashion accessories.

35. The use of the word CHARLOTTE in connection with GMA's products is arbitrary and strong.

36. JIMLAR and its customers were aware or should have been aware of the GMA marks before they began using CHARLOTTE to identify its footwear.

37. JIMLAR and JILDOR and other JIMLAR customers have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms to identify its goods. ("past infringing use").

38. JIMLAR and JILDOR and other JIMLAR customers continue to use the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms to identify its goods (hereinafter "present infringing use").

39. JIMLAR and its customers have in the past and are now intentionally infringing upon the CHARLOTTE mark.

40. A search of the United States Patent and Trademark Office list of registered marks would have revealed that GMA was the owner of the mark CHARLOTTE with respect to footwear and JIMLAR infringed and is infringing in bad faith.

41. Prior to using the CHARLOTTE mark as described in paragraph 37, JIMLAR and JILDOR failed to conduct a trademark search.

42. JIMLAR commenced use of the CHARLOTTE mark as stated in paragraph 37 no

6

earlier than 2003.

43. The CHARLOTTE mark is inherently distinctive as to GMA's goods and the mark has been advertised widely as to GMA's goods.

44. GMA's use of CHARLOTTE has substantial secondary meaning in the marketplace.

45. Since at least 2006, JIMLAR and its customers have used the CHARLOTTE mark as described herein and JIMLAR and its customers are co-infringers and acting in concert in the scheme to infringe as set forth herein.

46. Since at least 2006, JIMLAR has sold an infringing line of footwear which infringement was furthered and enhanced by JIMLAR's distribution of these infringing items, advertised, promoted, marketed or displayed in connection with the CHARLOTTE mark to JIMLAR's customers, who in turn peddled, displayed, marketed, offered for sale and sold the infringing goods at the retail level to the general public in connection with the CHARLOTTE mark.

47. JIMLAR received a cease and desist letter from GMA in July 2007.

48. JIMLAR's counsel received a cease and desist letter in August 2007 to which it did not reply. A copy of the letter is annexed hereto as Exhibit "A".

49. The goods that JIMLAR advertises, promotes, sells, or offers for sale in connection with the CHARLOTTE mark are products closely related to those for which GMA owns registered trademarks and are in the same Class for which GMA owns a trademark registration.

50. The Jimlar goods mentioned in paragraph's 37 and 38 are in Class 25.

51. GMA has priority over JIMLAR in the CHARLOTTE mark for footwear.

## COUNT I – TRADEMARK INFRINGEMENT (FEDERAL)

52. GMA repeats and realleges the allegations of paragraphs 26 through 51 as if fully set

forth herein.

53. Long after the adoption and use by GMA of the CHARLOTTE Trademark, and with at least constructive notice of the registration of the GMA Trademarks, JIMLAR has and continues to knowingly and intentionally use reproductions, copies or colorable imitations of the CHARLOTTE Trademark to market, promote, identify design, manufacture, sell and distribute its products.

54. JIMLAR has been offering for sale products using a confusingly similar name, e.g., CHARLOTTE BRAID, CHARLOTTE RING, CHARLOTTE FLOWER CUT, CHARLOTTE 2. Copies of advertisements for these goods are respectfully annexed hereto as Exhibit "B".

55. JIMLAR, by its acts as aforesaid, has taken advantage of the creative skill of GMA, and of the good will developed by GMA in the mark CHARLOTTE, and have capitalized upon advertisements for CHARLOTTE.

56. JIMLAR's use of GMA's word mark results in confusion as to sponsorship, association, source and origin of GMA and JIMLAR's products.

57. JIMLAR has advertised, promoted, marketed and/or sold its products as set forth in paragraphs 37 and 54.

58. Having adopted and used the CHARLOTTE mark after GMA, JIMLAR is the junior user of the mark.

59. JIMLAR continues to inject its products into commerce with the express intent of profiting from GMA's valuable registered trademarks and JIMLAR's customers are acting in concert with JIMLAR.

60. The acts of JIMLAR complained of herein have been without the authorization or consent of GMA.

61. JIMLAR's acts have caused and will continue to cause irreparable harm and injury to GMA.

62. The activities of JIMLAR, complained of herein, constitute infringement of the GMA Trademarks in violation of Section 35 of the Lanham Act, 15 U.S.C. Section 1114(1) and JIMLAR's customers are co-infringers.

## COUNT II – VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

63. As a cause of action and ground for relief, GMA alleges that JIMLAR is engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 22 through 62 as if fully set forth herein.

64. Section 360-1 of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark... or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-1.

65. JIMLAR has engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale products using the same, or similar CHARLOTTE word mark and upon information and belief continue to fill purchase orders using the word CHARLOTTE and/or the style names listed in paragraph 54 for its products.

66. JIMLAR has engaged in, and continues to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of GMA's products.

9

67.  JIMLAR has engaged in, and continues to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to affiliation, connection or association of GMA's products with the JIMLAR's products.

68.  GMA has not consented to any sponsorship, approval, status, affiliation, or connection with JIMLAR's products.

69.  GMA has been irreparably damaged, and will continue to be damaged by JIMLAR's trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

**COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW**

70.  As a cause of action and ground for relief, GMA alleges that JIMLAR is engaged in acts of trademark infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 26 through 69 as if fully set forth herein.

71.  JIMLAR has infringed GMA's trademarks and continues to do so, by manufacturing, marketing and/or selling products that infringe the CHARLOTTE trademark.

72.  JIMLAR's acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

73.  Upon information and belief, JIMLAR intends that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

74.  JIMLAR's deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive

practices have caused and continue to cause injury to consumers. Unless JIMLAR's acts are restrained by this Court, JIMLAR's deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

75.  JIMLAR's acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by JIMLAR.

76.  JIMLAR's acts have harmed GMA's reputation and have severely damaged GMA's goodwill.

77.  Upon information and belief, JIMLAR's acts are an attempt to deceive the public. The public is likely to be confused as to the source and origin of GMA's products.

78.  JIMLAR has misappropriated GMA's trade name, and upon information and belief continue to do so, by selling products that are ordered under a mark that is confusingly similar to GMA's line of "CHARLOTTE" products.

79.  JIMLAR's trade name infringement is in violation of the common law of New York.

80.  JIMLAR's aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of GMA's trademark, unfair competition, palming-off and passing-off against GMA, and unjust enrichment by JIMLAR, all in violation of GMA's rights under the common law of New York.

81.  JIMLAR's aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by JIMLAR.

82.  The public is likely to be confused as to the source, origin, sponsorship, approval or certification of the parties' products.

83.  Upon information and belief, JIMLAR's actions have been willful and deliberate.

84. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of JIMLAR's deceptive business practices and therefore GMA is entitled to injunctive relief under New York Common Law.

**COUNT IV – IMPORTATION OF INFRINGING GOODS (FEDERAL)**

85. GMA repeats and realleges the allegations of paragraphs 26 through 84 as if fully set forth herein.

86. Upon information and belief, JIMLAR has imported and continues to import infringing goods into the United States in violation of 15 U.S.C. Section 1125(b).

87. JIMLAR's acts are also prohibited by 15 U.S.C. Section 1124.

88. The activities of JIMLAR, complained of herein, constitute willful and intentional infringement of the GMA Trademarks in violation of 15 U.S.C. Section 1125(b) and 15 U.S.C. Section 1124.

WHEREFORE, the defendant, GMA ACCESSORIES, INC., prays:

A.     That the Complaint of JIMLAR and all causes of action contained therein be dismissed.

B.     That this Court adjudge that JIMLAR and its customers have infringed, counterfeited, tarnished and diluted GMA's CHARLOTTE trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in GMA's counterclaims, in violation of GMA's rights under New York Law as well as the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1124 and 1125.

C.     That JIMLAR and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in

active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing products in connection with the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (3) holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "CHARLOTTE" Trademark or (4) from in any other way infringing GMA's "CHARLOTTE" word mark or (5) effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in numbers (1) through (4) hereof.

D.    That JIMLAR be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the "CHARLOTTE" word mark, and any plates, molds, and other materials for making such infringing products.

E.    That JIMLAR be directed to file with this Court and to serve upon GMA within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs C and D, pursuant to 15 U.S.C. 1116(a).

F.    That GMA recover JIMLAR's and its co-infringers' profits arising from its acts of trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and

13

business practices, and consumer fraud pursuant to both New York law and 15 U.S.C.
1117(a).

G.    That the Court treble such damages as awarded pursuant to 15 U.S.C. 1117(b).

H.    That GMA recover pre-judgment and post-judgment interest on each and every
award.

I.    That GMA recover its reasonable attorney fees incurred in this action pursuant to
15 U.S.C 1117(a).

J.    That GMA have and recover its taxable costs and disbursements incurred in this
action pursuant to 15 U.S.C. 1117(a).

K.    That GMA have such other and further relief as the Court may deem just and
proper.

L.    That GMA at its option be awarded statutory damages of $1 million in lieu of
actual damages pursuant to 15 U.S.C. Section 1117(c).

## JURY DEMAND

GMA respectfully requests a trail by jury as to all issues.

Dated: New York, New York
       October 31, 2007

                              Respectfully Submitted,

                              THE BOSTANY LAW FIRM

                              By:_____
                              JOHN P. BOSTANY (JB-1986)
                              ANDREW T. SWEENEY (AS-0724)
                              Attorney for Defendant–Counterclaimant,
                              GMA Accessories, Inc.
                              40 Wall Street, 61st Floor
                              New York, New York 10005
                              (212) 530-4400